USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/23/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

MADISON CAPITAL MARKETS, LLC,

                    Plaintiff,                15 Civ. 7213

    -against-                           OPINION

STARNETH EUROPE B.V.,
STARNETH HOLDING B.V.,
CHALLENGER ACQUISITIONS LIMITED,
and WIL ARMSTRONG, an individual,

                    Defendants.

------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        MORITT HOCK & HAMROFF, LLP
        450 Seventh Avenue, 15th Floor
        New York, NY 10123
        By:  David A. Schrader, Esq.


        Attorneys for Defendant
        Starneth Europe B.V.
        Starneth Holding B.V.
        Challenger Acquisitions Limited

        SICHENZIA ROSS FRIEDMAN FERENCE, LLP
        61 Broadway
        New York, NY 10006
        By:  Christopher P. Milazzo, Esq.
            Mendy Menachem Piekarski, Esq.

Attorneys for Defendant
<u>Wil Armstrong and Machiel Smits</u>

DLA PIPER US LLP
1251 Avenue of the Americas
New York, NY 10020
By:   John J. Clarke, Jr., Esq.
      Neal F. Kronley, Esq.

**Sweet, D.J.**

Defendants Wil Armstrong ("Armstrong") and Machiel Smits ("Smits") have moved to dismiss the complaint of plaintiff Madison Capital Markets, LLC ("Madison" or the "Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)2 and 12(b)6 for lack of jurisdiction. Defendants Starneth Europe B.V. ("Starneth Europe"), Starneth Holding B.V. ("Starneth Holding"), Challenger Acquisitions Limited ("Challenger"), and Mark Gustafson ("Gustafson") (collectively, the "Corporate Defendants") have moved for the same relief under the same rule. The Plaintiff has cross-moved pursuant to Federal Rule of Civil Procedure 15(a)(2) to amend its complaint. Plaintiff has consented to drop Gustafson and Smits as defendants. Pl.'s Opp. at 2. Based on the conclusions set forth below, the motion of Armstrong and Starneth Europe, Starneth Holding and Challenger to dismiss for lack of jurisdiction is granted, and the motion of Plaintiff to amend its complaint is denied.

## I. Prior Proceedings

Madison filed its complaint on September 11, 2015. The instant motions were heard and marked fully submitted on April 7, 2016.

## II.  The Complaint

Plaintiff Madison is a Delaware limited liability company with offices in Florida and New York. See Compl. ¶ 1; Compl., Ex. 9. Nonparty Stefan Spath ("Spath") is Plaintiff's employee who represented Plaintiff in the events underlying this dispute. See Compl. ¶¶ 19, 25-29. Spath works in Plaintiff's Orlando, Florida office. See Compl., Exs. 1, 9.

Defendant Challenger is a Guernsey company with its principal place of business located in Zurich, Switzerland. Compl. ¶ 4; See Declaration of Mark Gustafson ("Gustafson Decl.") ¶ 3. Challenger was formed to undertake acquisitions of companies in the entertainment and leisure sectors. Compl. ¶ 13. Challenger's shares are listed on the London Stock Exchange. Gustafson Decl. ¶ 3. Challenger does not maintain any offices in New York. See id.

Gustafson is the Executive Chairman of Challenger and a Canadian citizen and resident. Id. ¶¶ 1-2. He does not maintain a residence or office in New York. Id. ¶ 2.

Defendants Starneth Europe and Starneth Holding are companies formed in the Netherlands and engaged in the business

2

of designing and engineering observation wheels. Compl. ¶ 12
Gustafson Decl. ¶ 4. Starneth Europe and Starneth Holding's
offices are located in the Netherlands. Gustafson Decl. ¶ 4.
They do not maintain New York offices. Id. ¶ 7.[1]

In July of 2015, Challenger acquired Starneth Europe and
Starneth Holding. See Compl. ¶ 21. Starneth was not a party to
the acquisition. Gustafson Decl. ¶ 11.

The parties to the Starneth Acquisition first met to
discuss the transaction on February 23, 2015 in Zurich,
Switzerland. Gustafson Decl. ¶ 10. Subsequently, Gustafson, on
behalf of Challenger, and Smits, on behalf of Starneth Europe
and Starneth Holding, negotiated the terms of the Starneth
Acquisition through telephone calls--neither party was located
in New York during those telephone calls. Id. Ultimately, in
July 2015, the parties finalized the Starneth Acquisition and
executed the related documents in Enschede, Netherlands. Id. No
part of the Starneth Acquisition occurred in New York.

---

[1] Non-party to the complaint Starneth LLC ("Starneth") is not
affiliated with Defendants Challenger, Starneth Europe and,
Starneth Holding.

In May 2015, prior and unrelated to the Starneth
Acquisition, Challenger invested $3 million for a 3% stake in
New York Wheel Investor LLC (the "Wheel Investment"). Gustafson
Decl. ¶ 12. In March 2015, Gustafson, on behalf of Challenger,
began discussing the Wheel Investment with New York Wheel's
representative over the telephone from Gustafson office in
Canada. Id. Challenger negotiated the terms of its investment
through telephone calls and correspondence from various
locations, all of which were outside the United States. Id.
Finally, Gustafson received and executed the deal documents in
his Canada office. Id.

Neither Starneth nor Plaintiff, the parties to the
Agreement, participated in the Wheel Investment and, conversely,
the parties to the Wheel Investment had no relationship to the
Agreement.

Armstrong is a resident of Florida and is the president of
Starneth. Compl. ¶ 5. Armstrong does not maintain an office in
the State of New York and does not own real property there.
Declaration of Wil Armstrong dated November 16, 2016 ("Armstrong
Decl.") ¶¶ 2, 3. He did not attend any meetings in New York, or,
to the best of his knowledge, participate in any telephone calls
with any person who was then present in New York in connection

4

with the negotiation of the non-disclosure agreement between Starneth and Madison Capital or the acquisition of shares of Starneth Holding and Starneth Europe. Armstrong Decl. ¶ 7. His interactions with Madison were limited to contacts with its employee Spath, who resides near Armstrong's home in Florida, both in Florida and in meeting in Europe. Id.

According to the Complaint, on June 16, 2014, Starneth and Plaintiff entered into a confidentiality and non-circumvention Agreement. Compl. ¶ 17. The Agreement was executed by Plaintiff's Orlando, Florida office and Starneth's Winter Park, Florida office. See Compl. Ex. 1.

In its recitals, the Agreement stated that the parties were entering into it because they "wish to provide and to receive relevant information, which the Parties agree and regard as proprietary and confidential, with respect to the Projects [a defined term]." Compl. Ex. 1. The agreement defined the meaning of "confidential Information" and set forth restrictions on its use and further dissemination.

The Agreement included a "non-circumvention" provision, which stated that "Starneth agrees that ... it shall not ... accept any business whatsoever from Madison's contact, Enex

Group of Zurich, Switzerland, or any of its principals or
affiliates, without the express prior written consent of
Madison." Id. § 6. The Agreement also provided that "[n]either
Party shall have any legal obligation or liability with respect
to any transaction nor other arrangement by virtue of this
Agreement, except as expressly agreed herein." Id. § 5.

Plaintiff alleges that it provided financial advisory
services to "Defendants" in two separate transactions.
Compl. ¶ 14.

According to the Complaint, on July 16, 2015,
Challenger announced that it had acquired all the shares of
Starneth Holding and Starneth Europe. Compl. ¶¶ 21-22.
Plaintiff alleges that several months earlier, in February
2015, Arthur Davis ("Davis"), who was Madison's contact at
Enex Group, acquired Challenger. Compl. ¶ 20. Plaintiff
also alleges that Challenger invested $3,000,000 in the
"New York Wheel" in May 2015, id. ¶ 41, which the Complaint
reflects is an unrelated third-party, id. ¶ 32. Plaintiff
claims that non-party Davis learned of the opportunity
during a meeting in Switzerland that was attended by
plaintiff's employee Spath and that Spath later asked

Armstrong to send contact information for the principals of
the New York Wheel to Davis. Id., ¶ 32.


On July 20, 2015, Spath wrote in an email to Armstrong
reciting that four days prior, his firm's "management" and
"legal advisors" had informed him that the public
announcement of the Challenger transaction breached the
non-circumvention clause in the non-disclosure agreement
between Madison and Starneth. Compl., Ex. 10. In later
letters, counsel for all defendants denied that any
consequences were due to Madison Capital Markets, LLC. See
Compl., Exs. 11, 13.


## III. The Applicable Standard

### A.    Personal Jurisdiction

Rule 12(b)(2) requires that a court dismiss a claim if the
court does not have personal jurisdiction over the defendant.
See Fed.R.Civ.P. 12(b)(2). A plaintiff in federal court bears
the burden of making a prima facie showing that jurisdiction
exists. Troma Entm't, Inc. v. Centennial Pictures Inc., 729 F.3d
215, 217 (2d Cir. 2013). In evaluating a motion to dismiss for
lack of personal jurisdiction, the Court is not required to
"accept as true a legal conclusion couched as a factual
allegation." Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185

(2d Cir. 1998) (citation and internal quotation marks omitted). "[A] plaintiff may not rely on 'conclusory non-fact-specific jurisdictional allegations' to overcome a motion to dismiss." Doe v. Delaware State Police, 939 F. Supp. 2d 313, 321 (S.D.N.Y. 2013) (citing Jazini, 148 F. 3d at 185). Courts "will not draw argumentative inferences in the plaintiff's favor." Mazloum v. Int'l Commerce Corp., 829 F. Supp. 2d 223, 227 (S.D.N.Y. 2011); see Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) (same).

"Personal jurisdiction over a defendant in a diversity action in the United States District Court for the Southern District of New York is determined by reference to the relevant jurisdictional statutes of the State of New York." Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 762 (2d Cir. 1983) (citations omitted). However, Plaintiff must establish that jurisdiction is proper both under the law of the state in which the Court sits and that assertion of jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. See Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014); Daimler AG v. Bauman, 134 S. Ct. 746, 753 (2014). The Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." Walden, 134

S. Ct. at 1121 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980)).

To establish Due Process is met, "[a]lthough a defendant's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Walden, 134 S. Ct. at 1121 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). These can be established through "general" jurisdiction, which turns on the defendant's connections with the forum state, or "specific" jurisdiction, which "depends on an affiliation between the forum and the underlying controversy (i.e., an activity or occurrence that takes place in the forum State and is therefore subject to the State's regulation)." Walden, 134 S. Ct. at 1121 n.6 (quoting Goodyear Dunlop Tires Opers., S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011)) (internal quotation marks and brackets omitted).

## B.    Failure to State a Claim

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), all factual allegations in the complaint are

9

accepted as true, and all inferences are drawn in favor of the
pleader.  Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d
Cir. 1993).  However, "a plaintiff's obligation to provide the
grounds of his entitlement to relief requires more than labels
and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555
(2007) (quotation marks omitted).  A complaint must contain
"sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'"  Ashcroft v. Iqbal,
556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570).

A claim is facially plausible when "the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged."  Iqbal, 556 U.S. at 663 (quoting Twombly, 550 U.S. at
556).  In other words, the factual allegations must "possess
enough heft to show that the pleader is entitled to relief."
Twombly, 550 U.S. at 557 (internal quotation marks omitted).

Additionally, while "a plaintiff may plead facts alleged
upon information and belief 'where the belief is based on
factual information that makes the inference of culpability
plausible,' such allegations must be 'accompanied by a statement
of the facts upon which the belief is founded.'"  Munoz-Nagel v.
Guess, Inc., No. 12-1312, 2013 WL 1809772, *3 (S.D.N.Y. Apr. 30,

10

2013) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)) and Prince v. Madison Square Garden, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006); see also Williams v. Calderoni, No. 11-3020, 2012 WL 691832, *7 (S.D.N.Y. Mar. 1, 2012). The pleadings, however, "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Twombly, 550 U.S. at 555 (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

## IV.   The Complaint is Dismissed for Lack of Personal Jurisdiction over All Defendants

Plaintiff does not allege that any defendants reside in New York. Instead, the Complaint predicates personal jurisdiction on plaintiff's contention that the non-resident defendants "committed tortious acts outside of New York that have caused injury to persons or property within the state." Compl. ¶ 9.

## A.   CPLR § 302(a)(3)(ii)

Long-arm jurisdiction over the acts of non-domiciliaries is governed by New York Civil Practice Law and Rules Section 302(a)(3)(ii). Specifically, CPLR § 302(a) provides, in relevant part, as follows:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who ... :
>
> * * *
>
> 3. commits a tortious act without the state causing injury to person or property within the state . . . if he ...
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. § 302 (McKinney).

The five requirements for jurisdiction under this provision are: "First, that defendant committed a tortious act outside the

State; second, that the cause of action arises from that act;
third, that the act caused injury to a person or property within
the State; fourth, that defendant expected or should reasonably
have expected the act to have consequences in the State; and
fifth, that defendant derived substantial revenue from
interstate or international commerce". LaMarca v. Pak-Mor Mfg.
Co., 95 N.Y.2d 210, 214, 735 N.E.2d 883, 886 (2000).

As a threshold matter, in order for CPLR § 302(a)(3) to
apply and confer long-arm jurisdiction, the cause of action must
allege tortious conduct. Plaintiff purportedly asserts three
tort claims against Defendants. Compl. ¶¶ 54-67. In reality,
however, Plaintiff is asserting contract claims because the crux
of all Plaintiff's claims is that it is entitled to compensation
for "financial advisory services" it purportedly provided. The
out-of-state tort provision of the New York long-arm statute set
forth in C.P.L.R. § 302(a)(3)(ii) is not available for breach of
contract actions. AVRA Surgical Robotics, Inc. v. Gombert, 41 F.
Supp. 3d 350, 361 (S.D.N.Y. 2014); Warck-Meister v. Diana
Lowenstein Fine Arts, 7 A.D.3d 351, 352, 775 N.Y.S.2d 859
(2004).[2] Accordingly, because Plaintiff essentially asserts

_____

[2] Further, CPLR § 302(a)(3) cannot provided a basis for
jurisdiction for Plaintiff's claim for unjust enrichment because
it is a quasi-contract claim, not a tort. See Anscombe Broad.
Grp., Ltd. v. RJM Commc'ns, Inc., No. 03-CV-0306A(F), 2004 WL

contract claims and unjust enrichment is a quasi-contract claim, the first condition for CPLR § 302(a)(3)(ii) jurisdiction does not exist.

Plaintiff has also failed to satisfy the third condition for CPLR § 302(a)(3)(ii) long-arm jurisdiction as to any Defendants regarding its tort claims because the situs of the injury, if any, was not New York. In determining whether there is injury in New York sufficient to warrant the imposition of § 302(a)(3) jurisdiction, courts apply a "situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 791 (2d Cir. 1999) (quotation omitted). "New York courts uniformly hold that the situs of a nonphysical, commercial injury is 'where the critical events associated with the dispute took place.'" United Bank of Kuwait, PLC v. James M Bridges, Ltd., 766 F. Supp. 113, 116 (S.D.N.Y. 1991) (citation omitted).

---

2491641, at *6 (W.D.N.Y. Nov. 3, 2004) ("insofar as ... unjust enrichment is a quasi-contract claim ... it also cannot provide a basis for long-arm jurisdiction under N.Y. CPLR § 302(a)(3)(i) or (ii)." (internal citations omitted)).

For purposes of long-arm jurisdiction under section 302(a)(3)(ii), "[a]n injury occurs at the place of the 'original event' which caused it." Pincione v. D'Alfonso, 506 F. App'x 22, 26 (2d Cir. 2012) (citing Bank Brussels Lambert, 171 F.3d at 791. "This 'original event' is . . . distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort." Id. "The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." Id. (citation omitted); see Don King Prods., Inc. v. Douglas, 735 F. Supp. 522, 531 (S.D.N.Y. 1990); Faherty v. Spice Entm't, Inc., No. 04 Civ. 02826 (RWS), 2005 WL 2036018, at *8 (S.D.N.Y. Aug. 23, 2005).

Importantly, the "original event" is distinguished from the final economic injury and the place where the tort's economic consequences are felt; only the former creates jurisdiction, not the latter. See Bank Brussels Lambert, 171 F.3d at 791. For jurisdiction to exist, the critical events underlying the dispute must have occurred in New York; it is not sufficient that the indirect financial consequences of the events are felt in New York due to the plaintiff's location in New York. See United Bank of Kuwait, 766 F. Supp. at 116 ("The occurrence of

15

financial consequences in New York due to the fortuitous
location of a plaintiff in New York is not a sufficient basis
for jurisdiction under § 302(a)(3) where the underlying events
took place outside New York."); Walden, 134 S. Ct. at 1125
("mere injury to a forum resident is not a sufficient connection
to the forum. Regardless of where a plaintiff lives or works, an
injury is jurisdictionally relevant only insofar as it shows
that the defendant has formed a contact with the forum State.").

In sum, the Complaint does not contain any allegation
linking Plaintiff's tort claims to New York. The Agreement was
executed between two Florida residents in Florida. See Compl.,
Ex. 1, at 3. The negotiations alleged in the Complaint occurred
in Switzerland. See Compl. ¶¶ 2, 3, 4, 21. Plaintiff's employee,
Spath, who allegedly was the individual involved in discussions
with the parties, is based in Florida. See Compl. Ex. 9.
Plaintiff has also failed to allege a loss of New York customers
or other New York business as a result of the allegedly tortious
actions. See Darby Trading Inc. v. Shell Int'l Trading &
Shipping Co., 568 F. Supp. 2d 329, 336 (S.D.N.Y. 2008) ("While
... lost sales or customers can satisfy the 'injury within New
York' requirement under Section 302(a)(3)(ii), those lost sales
must be in the New York market, and those lost customers must be
New York customers.").

Plaintiff's sole basis for seeking CPLR § 302(a)(3)(ii) jurisdiction is the fact that it maintains an office in New York and, presumably, the effect of the lost fees allegedly due to Plaintiff is felt in New York. See Compl. ¶ 9. Because Plaintiff has not alleged any direct injury occurring in New York, Plaintiff has not satisfied the third condition for CPLR § 302(a)(3)(ii) long-arm jurisdiction. Accordingly, the Complaint must be dismissed for lack of personal jurisdiction as against all Defendants.

Plaintiff also cannot satisfy the fourth condition for the imposition of CPLR § 302(a)(3)(ii) long-arm jurisdiction because Plaintiff has not alleged any facts to support its conclusion that Defendants had any reason to "expect or should [have] reasonably expect[ed]" their allegedly tortious activity outside of New York would have direct consequences within New York. See C.P.L.R. § 302(a)(3)(ii). This requirement "ensure[s] some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere." Ingraham v. Carroll, 90 N.Y.2d 592, 598, 665 N.Y.S.2d 10, 687 N.E.2d 1293, 1295 (1997). "The test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective

rather than subjective one." Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 241 (2d Cir. 1999) (citation omitted).

Moreover, New York courts apply the CPLR's "reasonable expectation" requirement "in a manner consistent with United States Supreme Court precedent" in order to "avoid conflict with federal constitutional due process limits." Id. Under established federal due process, minimum contacts must exist between the defendant and the forum (the "purposeful availment" test). Therefore, in order to be consistent with the federal law, New York courts interpret the CPLR's "reasonable foreseeability" requirement to also require evidence of the tortfeaser's purposeful New York affiliation. See Capitol Records, LLC v. VideoEgg, Inc., 611 F. Supp. 2d 349, 363 (S.D.N.Y. 2009) (quoting Kernan, 175 F.3d at 241) ("'[F]oreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market.'").

Not only is a purposeful New York affiliation required, but the New York Court of Appeals has ruled that the nonresident tortfeasor must have expected their tortious activity to have a direct consequence in New York. See Ingraham, 90 N.Y.2d at 598, 687 N.E.2d at 1295 ("The nonresident tortfeasor must expect, or

have reason to expect, that his or her tortious activity in another State will have direct consequences in New York."). The indirect financial loss resulting from the fact that the injured party resides in New York, as is the case here, does not qualify as an expectation of direct consequences. See Fantis Foods, Inc. v. Standard Importing Co., 49 N.Y.2d 317, 326, 402 N.E.2d 122 (1980) ("[CPLR § 302(a)(3)] jurisdiction . . . must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there.")

Little connection to New York has been established as to any Defendant, let alone a sufficient connection to warrant reasonable expectation that consequences would flow in New York, much less purposeful availment. The Agreement, which is the purported basis for Plaintiff's claims, was executed by two Florida residents in Florida. See Compl., Ex. 1, at 3. The meetings alleged in the Complaint occurred in Switzerland. Compl. ¶¶ 17, 29. Plaintiff's employee, Stefan Spath, who allegedly was the individual involved in discussions with the parties, is based in Florida. See Compl., Ex. 9. The conversations that allegedly alerted non-party Arthur Davis to the opportunity to make an investment in the New York Wheel

19

occurred in Switzerland and led to calls between Switzerland and Florida. Compl. ¶¶ 31, 32. There is no allegation in the Complaint of any meeting in, telephone call to, or other contact with New York.

In its opposition to Armstrong's motion, plaintiff does not dispute that the Agreement was signed by Spath and Armstrong in Florida. See Armstrong Decl. ¶ 6. Plaintiff nevertheless contends in its opposition that Armstrong's "commission of torts appears to have been in both New York State and outside the State." Opp. at 9. There are no allegations in the complaint to that effect, nor do any of its exhibits support that assertion. Instead, contrary to the complaint, a declaration from plaintiff's Florida-based employee Spath claims that during a two-year period he:

> had numerous meetings and conversations with Armstrong, including approximately 5 meetings within the State of New York and no less than 50 telephone calls into the State of New York. There were also text messages sent between Armstrong and myself where at least one party was in New York.

Declaration of Stefan Spath dated January 12, 2016 [Doc. No. 49] ("Spath Decl."), ¶ 8.

These conclusory assertions are not plausibly supported by the facts, and with few exceptions, Armstrong categorically denies them. See Supplemental Declaration of Wil Armstrong dated

February 11, 2016 ("Armstrong Supp. Decl."), ¶¶ 3-8. Spath does
not dispute that both he and Armstrong live and work in central
Florida, Armstrong Decl., ¶ 2; Spath Decl., ¶ 2, which was the
location of almost all of their contacts, Armstrong Decl., ¶ 7.
During the past several years, Armstrong was present in New York
at the same time as Spath on only one occasion – when a
connecting flight to Zurich they were both scheduled to take was
postponed due to weather. Armstrong Supp. Decl. ¶ 5; see also
Armstrong Decl. ¶ 7. While Armstrong occasionally has traveled
to New York for business and on vacation, none of his visits
included a meeting with Spath or anyone else from Madison.
Armstrong Supp. Decl. ¶ 4. Armstrong has had no more than two
telephone calls with Spath while Armstrong was present in New
York, id. ¶ 6, and he does not  recall Spath ever mentioning
during a telephone call that he was participating in the call
from New York, id.


     The factually unsupported and conclusory statements
contained in the Spath Declaration may be disregarded. See
Chirag v. MT Marida Marguerite Schiffahrts, 604 F. App'x 16, 19
(2d Cir. 2015) ("A prima facie case requires non-conclusory
fact-specific allegations or evidence showing that activity that
constitutes the basis of jurisdiction has taken place.") (citing
Jazini, 148 F.3d at 185); Wallert v. Atlan, 141 F. Supp. 3d 258,

276 (S.D.N.Y. 2015) ("A party . . . may not rely on 'conclusory non-fact specific jurisdictional allegations' to overcome a [Rule 12(b)(2)] motion to dismiss") (citation omitted).

Even if Spath's recollection of "approximately 5 meetings" and "no less than 50 telephone calls" with Armstrong in New York are accurate, Plaintiff has not offered any plausible connection between these alleged New York contacts, on one hand, and events allegedly giving rise to its claims, on the other hand. Plaintiff has not offered any facts that would support an inference that Armstrong "expect[ed] or should  reasonably [have] expect[ed]" any of his acts to have consequences in  New York, C.P.L.R. § 302(a)(3)(ii), meaning Plaintiff has not made out a prima facie case of personal jurisdiction under section 302(a)(3)(ii). See Lawrence Wisser & Co., Inc. v. Slender You, Inc., 695 F. Supp. 1560, 1564 (S.D.N.Y. 1988).

The same holds true for Corporate Defendants; Plaintiff fails to allege any facts to support that Corporate Defendants purposefully availed themselves of the New York forum or had reason to expect that their actions would have direct consequences in New York. Plaintiff fails to allege any relationship whatsoever between New York and the Starneth Acquisition. Plaintiff concedes that in the Starneth

22

Acquisition, Challenger, a Guernsey entity, purchased two Dutch entities, Starneth Europe and Starneth Holding. Compl. ¶¶ 2-4, 22. Because Plaintiff has failed to allege any New York nexus to the Starneth Acquisition, Corporate Defendants had no reason to expect that the Starneth Acquisition would have a direct consequence in New York.

Plaintiff also fails to allege that the Wheel Investment involved any purposeful availment of New York. Plaintiff fails to allege that Corporate Defendants negotiated terms, conducted meetings, or entered into any contracts in New York. Moreover, as with the Starneth Acquisition, Challenger had no reason to believe that the Agreement would be implicated, as the Agreement was between Starneth LLC and Plaintiff—both of whom were not parties to the Wheel Investment.

Furthermore, the Wheel Investment is unrelated to Plaintiff's core claims, which stem from the Agreement as it relates to the Starneth Acquisition. Thus, while the Wheel Investment may have a New York connection, Plaintiff's claims do not arise from that transaction. Plaintiff essentially seeks finder's and/or consulting fees for its alleged introduction and assistance on the Starneth Acquisition (a position which Corporate Defendants deny) in alleged violation of the

Agreement. This claim, however, is wholly unrelated to the Wheel Investment, which did not involve any of the parties to the Agreement. Moreover, the Wheel Investment did not involve—even by the Complaint's allegations—any parties that were introduced by the Plaintiff. Accordingly, for purposes of establishing jurisdiction, only the alleged tortious conduct regarding the Starneth Acquisition is relevant.

Plaintiff has not satisfied the fourth condition for CPLR § 302(a)(3) long-arm jurisdiction.

### B.   CPLR § 302(a)(2)

For the first time in its opposition, Plaintiff suggests that Defendants should be subject to personal jurisdiction under C.P.L.R. § 302(a)(2), which applies if a defendant "commits a tortious act within the state." N.Y. C.P.L.R. § 302(a)(2).

"New York law limits § 302(a)(2) jurisdiction to tort claims, so plaintiff cannot rely on this provision to authorize specific jurisdiction for its contract claim. As to its tort claims, plaintiff's resort to § 302(a)(2) is similarly futile. The New York Court of Appeals has construed this provision to

24

require that the defendant was physically present in New York when he committed the tort." AVRA Surgical Robotics, 41 F. Supp. 3d at 360 (citing Bensusan Restaurant Corp. v. King, 126 F.3d 25, 28 (2d Cir.1997)) (internal citations omitted). The Opposition's single case to the contrary - Banco Nacional Ultramarino S.A. v. Chan - has been ruled to be no longer good law, as it pre-dated the Second Circuit's decision in Bensusan. See LaChapelle v. Torres, 1 F. Supp. 3d 163, 172 (S.D.N.Y. 2014) ("Banco Nacional Ultramarino, S.A. v. Chan . . . upon which [defendants] rely, pre-dates and is contrary to Bensusan."); see also Panacea Sols., Inc. v. Roll, No. 05 CIV 10089 RCC, 2006 WL 3096022, at *4 (S.D.N. Y. Oct. 31, 2006) ("the cases cited by Plaintiff pre-date Bensusan Restaurant Corporation v. King, and are in the group of cases described and rejected by the Bensusan court for not requiring physical presence for § 302(a)(2) jurisdiction . . . After Bensusan, it is clear that jurisdiction under CPLR § 302(a)(2) does not exist where the plaintiff fails to allege that the defendant committed a tortious act while physically present in New York."). Accordingly, § 302(a)(2) requires that the defendant be physically present in New York when he committed the tort.

Plaintiff fails to plausibly allege that any Defendants were physically present in New York when the alleged torts

occurred. In fact, according to the Complaint, all the original events giving rise to Plaintiff's purported injuries occurred in Florida, The Netherlands, and in Canada. Accordingly, Section 302(a)(2) does not confer personal jurisdiction over Defendants.

### C.   CPLR § 302(a)(1)

Plaintiff alleges, for the first time in opposition, that personal jurisdiction exists over Defendants under CPLR § 302(a)(1). See Opp. at 7.

CPLR § 302(a)(1) confers jurisdiction over a non-domiciliary who "transacts any business within the state," for claims arising out of that business. See N.Y. C.P.L.R. § 302(a)(1). The "transacting business" element requires a defendant "to have 'purposely availed [himself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws.'" Energy Brands Inc. v. Spiritual Brands, Inc., 571 F.Supp. 2d 458, 466 (S.D.N.Y. 2008) (quoting Bank Brussels Lambert, 171 F.3d at 787 (2d Cir. 1999)). Additionally, for § 302(a)(1)jurisdiction to apply, there must be "a substantial nexus" between the business transaction and

the claim. See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 31 (2d Cir. 1996).

For purposes of CPLR § 302(a)(1), "purposeful availment" occurs when the locus of contracting or performance is New York or the defendant projects itself into New York for the purpose of creating a business relationship. See Agency Rent A Car, 98 F.3d at 29 (whether defendant transacted business in New York depends on, inter alia, whether defendant has ongoing contractual relationship with a New York corporation and whether contract was negotiated or executed in New York). In determining whether a non-domiciliary purposely availed itself of the privilege of conducting activities within New York for purposes of § 302(a)(1 ), a "court must look at the totality of circumstances to determine the existence of purposeful activity and may not subject the defendant to jurisdiction based on 'random,' 'fortuitous,' or 'attenuated' contacts." Aquiline Capital Partners LLC v. FinArch LLC, 861 F. Supp. 2d 378, 387 (S.D.N.Y. 2012) (quoting PaineWebber Inc. v. WHV, Inc., No. 95-0052(LMM), 1995 WL 296398, at *2 (S.D.N.Y. May 16, 1995)).

In applying § 302(a)(1), "New York courts have cautioned ... that 'defendants, as a rule, should be subject to suit where they are normally found, that is, at their pre-eminent

27

headquarters, or where they conduct substantial business activities. Only in a rare case should they be compelled to answer a suit in a jurisdiction with which they have the barest of contact.'" Hutton v. Priddy's Auction Galleries, Inc., 275 F. Supp. 2d 428, 439 (S.D.N.Y. 2003) (quoting McKee Electric Co. v. Rau/and-Borg Corp., 20 N.Y.2d 377, 283 N.Y.S.2d 34, 38, 229 N.E.2d 604 (1967)).

Here, in support of § 302(a)(1) jurisdiction, the Opposition only states that "the Spath Declaration provides extensive detail of [Corporate Defendants'] contacts with ... the State of New York." Opp. at 7. Such detail, however, is absent from the Spath Declaration. Indeed, the entirety of the Spath Declaration is under two pages long, which could hardly be considered "extensive."

As discussed above, the Spath Declaration lacks detail concerning any purported contacts with New York. The only allegations in the Spath Declaration asserting ties to New York are unspecific, and stated in the most general manner possible. In sum, Plaintiff alleges: (1) that Defendant Armstrong visited New York five times and made 50 odd phone calls to discuss, with Spath, Starneth Europe and Starneth Holding; and (2) that it is Spath's "understanding that Starneth Europe BV and Starneth

28

Holdings BV are both involved in the New York wheel's engineering and construction." Spath Decl., ¶ 8. These claims are contradicted by the evidence and, even if true are not sufficient to allege personal jurisdiction under CPLR § 302(a)(1).

Here, as discussed above, any relationship between Armstrong and Spath - the signatories to the Agreement- was not formed in New York. Armstrong first met Plaintiff's employee, Spath, and signed the Confidentially Agreement in Florida. See Armstrong Decl. at 2. Indeed, Plaintiff does not allege that the first meeting between Spath and Armstrong occurred in New York, or that any such meeting was crucial to the negotiation of or entry into the Agreement. Thus, even accepting Spath's allegations, Spath and Armstrong met only a handful of times in New York and discussed a pre-existing business relationship that even Spath does not dispute arose outside of New York. This would not give rise to personal jurisdiction under CPLR § 302(a)(1) even if Spath's assertions were true.

Similarly, Spath's assertion, essentially upon information and belief, that both Starneth Europe and Starneth Holding are involved in the New York Wheel business is conclusory. Gustafson, the Executive Chairman of Challenger, the parent

company of Starneth Europe and Starneth Holding, submitted a
declaration stating that: "[Starneth Europe and Starneth
Holding] do not conduct nor are they registered to conduct any
business in the State of New York. They do not maintain any New
York offices, employees, or bank accounts, nor do they own or
rent real property in New York. Starneth Europe and Starneth
Holding do not have any contacts, let alone substantial and
continuous contacts, with New York." Gustafson Decl. ¶ 7. [3]

Moreover, even if the Court were to accept as credible
Spath's allegation regarding Starneth Europe and Starneth
Holding's engineering work on New York Wheel, CPLR § 302(a)(1)
would not apply because, as discussed, to establish § 302(a)(1)
personal jurisdiction, Plaintiff must also show that the "cause
of action arises from such a business transaction." Vista Food
Exchange v. Champion Foodservice LLC, 2015 WL 5000863, at *3

---

[3] For the same reasons, jurisdiction under CPLR § 301 does not
apply because it has not been established that Defendants "do
business" in New York. New York CPLR § 301 permits "personal
jurisdiction over a non-domiciliary defendant whose business
activities within New York are 'continuous and systematic.'"
Pieczenik v. Dyax Corp., No. 00 Civ. 243(HB), 2000 WL 959753, at
*2 (S.D.N.Y. July 11, 2000) (citation omitted). To be amenable
to general jurisdiction under CPLR § 301, a defendant must be
doing business in New York "not occasionally or casually, but
with a fair measure of permanence and continuity." Beacon
Enterprises, 715 F.2d at 762 (citation omitted).

(RWS) (S.D.N.Y. Aug. 18, 2015) (quoting Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir.2007)). Here, Plaintiff fails to allege that its claims arise out of Starneth Europe and Starneth Holdings' alleged engineering work on the New York Wheel. See also Mem. of Law at 12-13. Rather, Plaintiff's purported claims arise from the Starneth Acquisition, which is unrelated to any alleged engineering work by Starneth Europe and Starneth Holding.

### D.    Overarching Constitutional Considerations

To satisfy "minimum contacts" through "general jurisdiction," plaintiff must demonstrate a defendant has forum contacts that "are so 'continuous and systematic' as to render" him "essentially at home" there. Daimler, 134 S. Ct. at 754. On February 18, 2016, the U.S. Court of Appeals for the Second Circuit issued its decision in Brown v. Lockheed Martin Corporation, 814 F.3d 619 (2d Cir. 2016). In Lockheed, the Second Circuit reaffirmed several principles of constitutional analysis with respect to assertions of general jurisdiction over an out-of-state defendant. The Lockheed Court confirmed that in Daimler AG v. Bauman, the United States Supreme Court "considerably altered the analytic landscape for general

31

jurisdiction and left little room for" general jurisdiction
arguments based on a corporation's contacts with states other
than the state of its primary place of business or place of
incorporation. Lockheed, 814 F.3d at 629. In the case before it,
the defendant therefore was not subject to general jurisdiction
in Connecticut even though it was registered to do business in
Connecticut, leased four buildings in the state, employed
between 30 and 70 individuals there, and derived about $160
million in revenue from Connecticut-based work. Id. at 627-630.

Specific jurisdiction turns on whether "the defendant has
'purposefully directed' his activities at . . . the forum and
the litigation 'arises out of or relates to' those activities."
Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 136 (2d Cir. 2014)
(citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472
(1985)). In evaluating whether specific jurisdiction has been
established, a court "focuses on 'the relationship among the
defendant, the forum, and the litigation'" to determine whether
"the defendant's suit-related conduct . . . create[s] a
substantial connection with the forum state." Walden, 134 S. Ct.
at 1121.

The Supreme Court has emphasized that the relationship
between the defendant's conduct and the forum "must arise out of

32

contacts that [the] 'defendant himself creates with the forum .
. . [a]nd the 'minimum contacts' analysis looks to the
defendant's contacts with the forum . . . itself, not the
defendant's contacts with persons who reside here."' Id. at
1122. Where, as here, the conduct at issue occurred entirely out
of state, "the defendant must have intentionally caused – i.e.,
expressly aimed to cause – an effect in the forum through his
conduct elsewhere." Wilder v. News Corp., No. 11 Civ. 04947
(PGG), 2015 WL 5853763, at *8 (S.D.N.Y. Oct. 7, 2015) (citations
omitted); see In re Terrorist Attacks on Sept. 11, 2001, 714
F.3d 659, 673-74 (2d Cir. 2013).

       In addition to evaluating whether an applicable test for
minimum contacts has been satisfied, the Court must
"'determine[] whether the assertion of personal jurisdiction
would comport with fair play and substantial justice.'" Gucci
Am., Inc., 768 F.3d at 136 (citing Burger King, 471 U.S. at 472,
476). This requires the Court to consider "[1] the burden on the
defendant, [2] the interests of the forum State, and [3] the
plaintiff's interest in obtaining relief. It must also weigh in
its determination [4] the interstate judicial system's interest
in obtaining the most efficient resolution of controversies; and
[5] the shared interest of the several States in furthering
fundamental substantive social policies." Asahi Metal Indus. Co.

                                   33

v. Superior Court of Cal., 480 U.S. 102, 113 (1987) (citation
and internal quotation marks omitted.

In this regard, it is the defendant's conduct that matters
for purposes of "minimum contacts" analysis, Walden, 134 S. Ct.
at 1121-22, and it therefore is irrelevant that plaintiff's main
office is located in New York or that the actions of its
Florida-based employee, Spath, "are processed through New York
and affect [plaintiff's] business" there, as plaintiff argues.
Opp. at 5; Spath Decl. ¶ 3. Nor are a defendant's forum contacts
relevant to the extent they are unrelated to the claims in
dispute. See Gucci Am. Inc. v. Li, 768 F.3d at 141; Licci v.
Lebanese Canadian Bank, 20 N.Y.3d 327, 339, 960 N.Y.S. 2d 695,
702 (2012) (plaintiff must establish "at a minimum, a
relatedness between the transaction[s] and the legal claim such
that the latter is not completely unmoored from the former").

As reasoned above, Plaintiff has not alleged that any
Defendant has sufficient contacts with New York to meet due
process requirements of personal jurisdiction.  The Complaint
cedes that the Corporate defendants are not domiciled in New
York, and Armstrong is a resident of FLorida. Compl. ¶¶ 2-5.
There is no allegation that Armstrong attended meetings in New
York related to the events at issue or signed any relevant

34

agreement in New York. Armstrong's declaration denies that he

did. See Armstrong Decl., ¶¶ 7-8. Nor is there any allegation

that Defendants "intentionally caused" an effect in New York

through alleged actions elsewhere. Instead, the Complaint

refers to interactions that occurred in Florida, Switzerland,

and the United Kingdom, that involved individuals who are

domiciled in Florida, Canada, and the Netherlands, and depend on

allegations of an acquisition of shares in two Netherlands

companies by a Guernsey corporation that is listed on the London

Stock Exchange.


It is not reasonable to compel out-of-state domiciled

Defendants to travel to New York based on limited contacts with

the forum state where there is no jurisdictional nexus between

that state and plaintiff's claims. See, e.g., U.S. S.E.C. v.

Sharef, 924 F. Supp. 2d 539, 548-49 (S.D.N.Y. 2013) (no

jurisdiction over defendant domiciled abroad); King Cnty., Wash.

v. IKB Deutsche Industriebank AG, 769 F. Supp. 2d 309, 321

(S.D.N.Y. 2011) (no jurisdiction over defendants domiciled

abroad who had not visited New York in four and five years,

respectively). There is insufficient basis for specific

jurisdiction over non-resident Defendants in the courts of New

York under these circumstances.

For all the reasons stated above, Plaintiff has failed to establish personal jurisdiction exists over any Defendants. Accordingly, the Complaint must be dismissed.

## V.   The Complaint Must be Dismissed for Failure to State a Claim

Plaintiff's Complaint sets forth five claims. Count One, against Armstrong, alleges breach of contract. Compl. ¶¶ 49-53. Count Two, against all Defendants, alleges tortious interference with contractual relations. Compl. ¶¶ 54-58. Count Three, against all Defendants, alleges conspiracy to induce breach of contract. Compl. ¶¶ 59-64. Count Four, against all Defendants, alleges unjust enrichment. Compl. ¶¶ 68-71.  Count Five, against all Defendants, alleges tortious interference with prospective contractual relations. Compl. ¶¶ 65-67. Plaintiff fails to state a claim as to each Count.

### A.   Armstrong is Not Personally Liable for Breach of Contract

In the first count of its complaint, Plaintiff asserts a claim against Armstrong for breach of contract, see Compl., ¶¶ 49-53, Armstrong was not a party to the nondisclosure

36

agreement that is cited as the basis for that claim, the agreement does not provide for compensation of any kind, and it includes a mandatory arbitration provision.

"Under New York law, an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'" Lerner v. Amalgamated Clothing & Textile Workers Union, 938 F.2d 2, 5 (2d Cir. 1991) (quoting Mencher v. Weiss, 306 N.Y. 1, 4, 114 N.E.2d 177, 179 (1953)); see also Abraham Zion Corp. v. Lebow, 761 F.2d 93, 103-04 (2d Cir. 1985) (non-party not liable for breach of contract).

In its Complaint, Plaintiff that alleges Armstrong signed the non-disclosure agreement "in his capacity as President of Starneth LLC," Compl., ¶ 19, and it was Starneth LLC – not Armstrong – that was a party to that agreement, Compl., ¶ 17; see Compl., Ex. 1 at 1 (agreement "is executed by (1) Starneth LLC, a Delaware company, and (2) Madison Capital Markets LLC . . .") . Courts regularly dismiss breach of contract claims against corporate officers in similar circumstances. See, e.g., Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co., 301

F.3d 50 (2d Cir. 2002) (no personal liability for corporate president who signed contract in his official capacity); Novak v. Scarborough Alliance Corp., 481 F. Supp. 2d 289 (S.D.N.Y. 2007) (granting CEO's motion to dismiss breach of contract claim where contract did not mention CEO whatsoever except signature line).

Plaintiff apparently concedes that Armstrong is not a party to the Agreement at the center of all of its claims; its proposed amended complaint would eliminate the breach of contract claim against him. That claim is dismissed not only because Armstrong signed the agreement only as a representative of Starneth LLC, but as reasoned infra, also because it is not an agreement "in writing" to pay compensation for services rendered . . . in negotiating the purchase . . . of a . . . business," as required under the New York statute of frauds, see N.Y. Gen. Oblig. Law § 5-701(a)(10)(2015); Armstrong Mem. At 15-17. Accordingly, Plaintiff fails to state a claim of breach of contract.

**B.   Plaintiff's Contract and Quasi-Contract Claims are Barred by the Statute of Frauds**

Under the New York statute of frauds, codified in section 5-701 of the New York General Obligations Law, "[e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing," that "[i]s a contract to pay compensation for services rendered . . . in negotiating the purchase . . . of a business opportunity, business . . . or an interest therein, including a majority of the voting stock interest in a corporation . . ." N.Y. Gen. Oblig. Law § 5-701(a)(10).

Section 5-701(a)(10) bars "a claim . . . where the plaintiff (1) identified and analyzed the business opportunity, (2) identified and analyzed potential business partners, and (3) was a 'major contributor' to the eventual formation of the enterprise." Transition Invs., Inc. v. Allen O. Dragge, Jr. Family Trust, No. 11 Civ. 04775 (AJN), 2012 WL 1848875, at *5 (S.D.N.Y. May 21, 2012) (quoting Gutkowski v. Steinbrenner III, 680 F. Supp. 2d 602, 613 (S.D.N.Y. 2010)); see Intertex Trading Corp. v. Ixtaccihuatl S.A. de CV, 754 F. Supp. 2d 610, 615 (S.D.N.Y. 2010) ("section 5-701(a)(10) of the statute of frauds . . . requires a writing for a contract regarding 'procuring an introduction to a party to the transaction' and 'assisting in

the negotiation or consummation of the transaction.'"). The
section applies when a plaintiff provides "connections,"
"ability," "knowledge," "know-how," or "know-who" in "bringing
about between principals an enterprise of some complexity or an
acquisition of a significant interest in an enterprise."
Freedman v. Chem. Constr. Corp., 43 N.Y.2d 260, 267, 401
N.Y.S.2d 176, 180 (1977)); see Intertex Trading Corp., 754 F.
Supp. 2d at 615 n.3 (section 5-701(a)(10) applies where broker
sought commission for "(i) introducing potential buyers ('know-
who'); (ii) arranging meetings; (iii) and participating in
business negotiations ('know-how')").


     These are the "services" that Madison Capital Markets
alleges that it provided in this case. See Compl. ¶¶ 14, 15, 27,
29, 32, 35. Plaintiff claims that "it is being deprived of
compensation for the value of the services it rendered in
connection with the Starneth Acquisition" by Challenger
Acquisitions and a subsequent investment by Challenger
Acquisitions in the New York Wheel. Compl. ¶¶ 53, 43. However,
there is no written agreement under which any party agreed to
"pay compensation for services rendered" by Madison Capital
Markets, LLC in that or any other regard. See N.Y. Gen. Oblig.
Law § 5-701(a)(10).

The Agreement with Starneth LLC that is the centerpiece of the Complaint contains no provision for the payment of compensation. To the contrary, the agreement is limited to identifying "Confidential Information" that might be exchanged between the parties and setting forth the restrictions on the use and dissemination of that information. See Compl. Ex. 1. In that regard, section 5 of the agreement provides:

> 5.  No Obligations, Representations, Warranties, Promises or Agreement. The Provider makes no representation or warranty as to the accuracy, completeness, or fitness for a particular purpose of the Confidential Information. Neither the Provider nor their Representatives shall have any liability relating to or arising from any use of or reliance upon any Confidential Information. Neither Party shall have any legal obligation or liability with respect to any transaction nor other arrangement by virtue of this Agreement, except as expressly agreed herein.

Compl. Ex. 1, § 5. The plain language of the Agreement disclaims any basis for compensation owed to Plaintiff.

Plaintiff does not mention section 5-701(a)(10) in its opposition. Instead, it contends that its claims are not barred because "the purpose of [the non-disclosure] agreement was that Starneth LLC could not disclose, divert to others or otherwise circumvent Madison's commission and

41

fees in connection with transactions for which Madison
would earn a fee or commission that were introduced to
Starneth." Opp. at 12. This alleged "purpose" is not based
on any language actually contained in the Agreement, which
says nothing about "commissions" or "fees" at all. See
Compl. Ex. A.

In the final count of the Complaint, Plaintiff asserts that
all Defendants "have been enriched by Madison's services in
facilitating the Starneth Acquisition and the New York Wheel
Investment." Compl. ¶ 69. This claim is also barred by the
statute of frauds provision in section 5-701(a)(10) of the New
York General Obligations Law, which states that it "shall apply
to a contract implied in fact or in law to pay reasonable
compensation . . ." N.Y. Gen. Oblig. Law § 5-701(a)(10).

"It is well settled that under New York law a plaintiff may
not escape the Statute of Frauds by attaching the label "quantum
meruit" or "unjust enrichment" or "promissory estoppel" to the
underlying contract claim." Morgenweck v. Vision Capital
Advisors, LLC, 410 F. App'x 400, 402n.1 (2d Cir. 2011)
(collecting cases). "[U]njust enrichment and quantum meruit are,
in this context, essentially identical claims, and both are
claims under 'a contract implied . . . in law to pay reasonable

42

compensation,' which will be barred by the statute of frauds where the 'compensation plaintiff seeks is for services rendered in negotiating the purchase . . . of a business opportunity." Transition Invs., 2011 WL 5865149, at *8 (quoting Snyder v. Bronfman, 13 N.Y.3d 504, 508-09, 893 N.Y.S.2d 800, 802 (2009)). As already discussed, Plaintiff has failed to allege any actionable agreement in writing to be paid compensation, and that pleading failure also requires dismissal of its unjust enrichment claim.[4]

Accordingly, Plaintiff's contract-related and quasi-contract claims are barred by the Statute of Frauds.

_____

[4] In addition, as to Armstrong, Plaintiff fails to allege that Armstrong received a "specific and direct benefit" at plaintiff's expense such that equity and good conscience require restitution. Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted); see Jaffe v. Capital One Bank, No. 09 Civ. 04106 (PGG), 2010 WL 691639, at *7-8 (S.D.N.Y. Mar. 1, 2010) (dismissing unjust enrichment claim that failed to show defendants benefited at plaintiff's expense); Mina Inv. Holdings Ltd. v. Lefkowitz, 51 F. Supp. 2d 486, 489 (S.D.N.Y. 1999) (dismissing unjust enrichment claim where plaintiff failed to allege the nature of defendant's enrichment, how enrichment was at expense of plaintiff, and why "good conscience" requires restitution).

### C.   Plaintiff Fails to State Claims of Tortious Interference

"In New York, a plaintiff alleging tortious interference with contract is required to prove: 'the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom.'" AHEPA 91, Inc. v. U.S. Dep't of Hous. & Urban Dev., 43 F. App'x 450, 454 (2d Cir. 2002) (citing Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370, 1375 (1996)). For the reasons discussed above, the Complaint fails to allege a breach of any contract, and that pleading failure by itself defeats plaintiff's claim for tortious interference with contract.

Moreover, the essence of plaintiff's tortious interference claim is that the acquisition of the shares of Starneth Holding B.V. and Starneth Europe B.V. by Challenger Acquisition "was expressly structured in an effort to deprive Madison of its approval rights under the [Agreement] and to deprive Madison of compensation for its valuable services" by excluding Starneth LLC from that acquisition. Compl. ¶¶ 21, 22. Accepting that allegation arguendo, structuring a transaction to ensure that it

44

does not contravene the terms of a contract does not constitute
"interference" with that contract much less tortious
interference. See JBCHoldings NY, LLC v. Pakter, 931 F. Supp. 2d
514, 536 (S.D.N.Y. 2013) ("competitive behavior—i.e., actions
taken in furtherance of 'normal economic self-interest'—is not
actionable under New York law"); MacPhee v. Verizon Commc'n,
Inc., No. 06 Civ. 07870 (BSJ), 2008 WL 162899, at *5 (S.D.N.Y.
Jan. 15, 2008) ("With nothing more than an allegation that
Telesector prepared a contract that contained material terms
that differed from her agreement with Dudley, the Court finds
that Plaintiff has failed to plead a claim for tortious
interference with contract against Telesector."); Carvel Corp.
v. Noonan, 3 N.Y.3d 182, 193, 785 N.Y.S.2d 359 (2004) (actions
"inconsistent" with franchise agreement do not amount to
tortious interference because agreement "does not preclude all
competition").

Plaintiff's claim for tortious interference with business
relations is similarly defective. To succeed on such a claim,
the plaintiff must show that the defendant interfered with the
plaintiff's business relationships either with the "sole purpose
. . . to harm the plaintiff or [through] the use of dishonest,
unfair, or improper means." AHEPA 91, Inc., 43 F. App'x at 455
(reciting elements of tortious interference with business

relations); Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006) (addressing tortious interference with prospective economic advantage). Even accepting its allegations solely for purposes of this motion, the Complaint alleges, at best, only that a transaction was structured to avoid the non-circumvention provision of Plaintiff's non-disclosure agreement with Starneth LLC, which is neither malicious nor unlawful for reasons already discussed.

### D.   Plaintiff Fails to State a Civil Conspiracy Claim

"New York does not recognize an independent tort of conspiracy." Id. at 401 (citing Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 969, 503 N.E.2d 102, 102, 510 N.Y.S.2d 546, 547 (1986)). Instead, a plaintiff alleging civil conspiracy must establish an "independent actionable tort and an additional four elements: (1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) a party's intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." Lewis v. Rosenfeld, 138 F. Supp. 2d 466, 479 (S.D.N.Y. 2001) (citing Best Cellars Inc. v. Grape Finds at Dupont, Inc., 90 F. Supp. 2d 431, 446 (S.D.N.Y. 2000)), dismissed in part on reconsid. on other grounds, 145 F. Supp. 2d 341 (S.D.N.Y. 2001).

Because a claim for civil conspiracy is predicated on an "independent actionable tort," a civil conspiracy claim must be dismissed when, as here, it is not grounded in a viable claim of tortious conduct. See Wilson v. Dantas, 746 F.3d 530, 537 n.4 (2d Cir. 2014); Ray Legal Consulting Grp. v. DiJoseph, 37 F. Supp. 3d. 704, 723 (S.D.N.Y. 2014).

## VI. Leave to Amend is Denied

Plaintiff has cross-moved for leave to amend the Complaint. The Proposed Amended Complaint makes the following changes: an allegation that Armstrong "dominates the[] operations" of Starneth, id. ¶ 6; an additional allegation related to jurisdiction that Defendants "conspired together in connection with" the alleged torts, id. ¶ 10; in the paragraph describing the meeting at which a memorandum of understanding was allegedly drafted between Starneth and Enex, the addition of the qualification "to, among other things, create a series of observation structures (Ferris Wheels) around the world," id. ¶ 34; a cause of action for breach of contract against Starneth LLC, id. ¶¶ 2, 50-57; and slight changes to the allegations contained in the remaining tortious interference claims, id. ¶¶ 58-80.

"Although it is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint, where amendment would be futile, denial of leave to amend is proper." Bazadier v. McAlary, 464 F. App'x 11, 12 (2d Cir. 2012) (citation and internal quotation marks omitted).

Plaintiff's proposed Amended Complaint does not cure all of the jurisdictional and pleading defects identified above, each of which independently mandate dismissal.[5]

As to the addition of Starneth LLC, even if Plaintiff's claim were able to survive a motion to dismiss for failure to state a claim, the Agremeent between Starneth LLC and Madison Capital Markets contains a clause stating "any dispute arising under or relating to this Agreement shall be resolved in an arbitration . . . . The decision of the arbitral tribunal shall be final and binding upon the Parties." Compl. Ex. 1, § 9(c).

---

[5] The implicit claim of breach of the implied covenant of good faith and fair dealing embedded in the breach of contract claim, Am. Compl. ¶ 56, is duplicative of the breach of contract claim. See Vysyaraju v. Mgmt. Health Sols., Inc., No. 12 CIV. 4420 JGK, 2013 WL 4437236, at *11 (S.D.N.Y. Aug. 19, 2013) ("a claim for breach of the implied covenant of good faith and fair dealing should be dismissed as duplicative when it arises from the same facts as a breach of contract claim.").

The Federal Arbitration Act "establishes a 'federal policy favoring arbitration,' requiring that '[courts] rigorously enforce agreements to arbitrate.'" Shearson Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987) (quoting Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983); Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985)); see 9 U.S.C. §§ 1, et seq. Under this "liberal federal policy[,] . . . 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 223 (2d Cir. 2001) (quoting Moses H. Cone, 460 U.S. at 24-25; Lapina v. Men Women N.Y. Model Mgmt. Inc., 86 F. Supp. 3d 277, 283 (S.D.N.Y. 2015) (same). Amendment to add Starneth LLC would therefore be futile, failing a motion to compel arbitration.

Accordingly, Plaintiff's Amended Complaint would not survive motions to dismiss for failure to state a claim and to compel arbitration, and leave to amend is denied as futile.

49

## VII. Conclusion

Based on the conclusions set forth above, Defendants'
motions to dismiss are granted and Plaintiff's motion for leave
to amend the Complaint is denied. The Plaintiff's Complaint is
dismissed in full.

It is so ordered.

New York, NY
August 23 , 2016

ROBERT W. SWEET
U.S.D.J.